**In re the Support of STATE of Minnesota, ex rel., Shirlyn A. MART, Petitioner, Respondent,**

v.

**Dennis L. MART, Appellant.**

**No. C7–85–1505.**

Court of Appeals of Minnesota.

Jan. 28, 1986.

Thomas L. Johnson, Hennepin Co. Atty., Mark V. Chapin, Asst. Co. Atty., Minneapolis, for respondent.

Ellen Dresselhuis, Minneapolis, for appellant.

Heard, considered and decided by WOZNIAK, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from an order denying appellant Dennis Mart's motion for blood tests to establish non-paternity. The trial court determined that a finding of paternity in the couple's judgment and decree was *res judicata* and barred the defense of non-paternity in a subsequent action for enforcement of child support. We affirm.

## FACTS

Dennis and Shirlyn Mart were married in 1968 and divorced on April 25, 1972 (in Hennepin County). In Dennis Mart's complaint for divorce he alleged there were two children born during the marriage, Penny Ann and Denise Ann, and that his wife gave birth to twin boys Ted and Fred on August 21, 1971, whose paternity was to be established. The parties orally agreed that Dennis would waive his right to contest paternity of the twin boys in exchange for Shirlyn's agreement to let him have legal custody of the girls. They further agreed that neither would seek child support from the other for the two children in the other's custody.

In 1984 a URESA action was brought by Hennepin County on behalf of Beltrami County (where Shirlyn lived) pursuant to Minn.Stat. § 518C.07 (1984) seeking reimbursement of child support payments made to the twin boys and establishment of child support amounts to be paid by Dennis Mart in the future. Dennis filed a counter-motion to the action contesting paternity and requesting a blood test. In support of his motion, Dennis submitted an affidavit asserting the waiver of his right to contest paternity by oral agreement made with Shirlyn back in 1979.

In March, 1985 the trial court ordered that blood testing be conducted on both parties and the twin boys. At that time counsel for Hennepin County did not have

a copy of the parties' judgment and decree and proceeded at the hearing under the false impression that paternity had not yet been established. Shortly after the March order, counsel received a copy of the decree which stated there were four children born of the marriage.[1] A motion was made by the county seeking to vacate the March order on the grounds it was *res judicata.*

In July, 1985 the trial court issued a second order vacating that portion of its March order requiring blood testing. The court determined that the finding of paternity of the twin boys in the 1972 judgment and decree was *res judicata* barring Dennis Mart's present defense of non-paternity, relying on this court's decision in *State ex rel. Ondracek v. Blohm,* 363 N.W.2d 113 (Minn.Ct.App.1985). It also refused to recognize the parties' oral agreement to waive child support as inconsistent with the best interests of the children.

The trial court ordered Dennis Mart to pay $226 per month commencing August 1, 1985. It denied Beltrami County's request for reimbursement of past support.

## ISSUES

1. Was an affirmative finding of paternity in a judgment and decree of dissolution *res judicata* barring the asserted defense of non-paternity in a subsequent URESA action?

2. Did the trial court err in its refusal to recognize the alleged oral agreement waiving payment of child support?

## ANALYSIS

■ In *Ondracek v. Blohm,* 363 N.W.2d 113 (Minn.Ct.App.1985), this court held that an affirmative finding of paternity in a judgment and decree of dissolution is *res judicata* barring an asserted defense of non-paternity in a subsequent URESA action. *Id.* at 115. The father in *Ondracek* did not challenge paternity until the URE-

SA action was brought. *Id.* at 114. Dennis Mart argues *Ondracek* is distinguishable from the facts presented here, where paternity was raised in the complaint and thereafter waived in exchange for the agreement with Shirlyn concerning custody and child support arrangements.

It is not distinguishable. In both cases paternity was clearly placed in issue by the pleadings in the dissolution action even though Dennis chose not to litigate this matter further because a default judgment was entered against Shirlyn pursuant to stipulation. He is bound by the determination made in the 1972 judgment and decree that all four children born during the marriage were those of the couple, thus precluding his defense in the subsequent proceeding.

2. Dennis Mart argues that his oral agreement with Shirlyn precludes the county from now seeking reimbursement for and establishment of child support for the twin boys.

■ The trial court found it was not in the best interests of the two children to recognize the alleged oral agreement between the parties, relying on the Minnesota Supreme Court's decision in *Tammen v. Tammen,* 289 Minn. 28, 182 N.W.2d 840 (1970). In *Tammen,* the mother sought an increased level of child support from that stipulated to by her in the parties' decree of dissolution. *Id.* at 29, 182 N.W.2d at 841. The father argued that the prior order could not be altered. *Id.* The supreme court rejected his argument stating:

> The basic right of minor children to support by the parents may not be affected by any agreement between the parties or third persons. Courts will not be bound by an agreement between parents affecting the rights of minor children with respect to support, but will be controlled by the welfare of the child as the paramount consideration.

1. Paragraph V of the parties April 25, 1972 judgment and decree provides as follows:
   That as issue of said marriage, there are four (4) minor children, to-wit:

Penny Ann, born April 3, 1968 and Denise Ann, born November 6, 1969. Ted R. born August 21, 1971, and Fred A., born August 21, 1971.

*Id.* at 30, 182 N.W.2d at 842 (citations omitted). *See also In re Swanson v. Swanson,* 372 N.W.2d 420, 423 (Minn.Ct. App.1985) ("Agreements between the parents, whether oral or written, do not limit the discretionary power of the court in setting child support obligations").

The trial court's refusal to recognize the parents alleged oral agreement to waive child support was proper.

## DECISION

Affirmed.