400 S.E.2d 882

**NANCY DARLENE M.**

v.

**JAMES LEE M., Jr.**

No. 19513.

Supreme Court of Appeals of
West Virginia.

Dec. 18, 1990.

Kevin V. Sansalone, Children's Advocate, Fairmont, for Nancy Darlene M.

G. Patrick Stanton, Jr., Stanton and Stanton, Fairmont, for James Lee M., Jr.

McHUGH, Justice:

This case is before the Court upon the appeal of Nancy Darlene M., from the February 28, 1989 final order of the Circuit Court of Marion County. The appellee is James Lee M., Jr.[1]

## I

The appellant and appellee were married on August 24, 1974. On October 20, 1979, the appellant gave birth to L.D.M.

The appellant filed for divorce in the Circuit Court of Marion County on December 26, 1980, alleging irreconcilable differences. The complaint also alleged that L.D.M. "was born of the marriage."

Following an "agreement for enlargement of time to answer," the appellee's answer, filed June 3, 1982, admitted essentially all of the substantive allegations of the appellant, including the allegation that L.D.M. was born of the marriage. The appellee is in the United States Marine Corps, serving in California during the time much of this litigation occurred, and was so when he filed his answer to the appellant's complaint.[2]

On August 23, 1982, the circuit court entered an order granting the divorce, awarding custody of the child to the appellant, and ordering the appellee to pay $250 per month child support. The circuit court's order noted that L.D.M. is the "infant child of the parties."[3]

In December, 1982, as a result of the appellee's failure to pay child support, the appellant filed a petition under the Revised

---

1. Consistent with our practice in cases involving sensitive matters, we use initials rather than full names. *See In re Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989) (citing cases).

2. The appellee also executed a waiver of rights on October 28, 1980, under the Soldiers' and

Sailors' Civil Relief Act of 1940, so that the appellant could proceed with the divorce action. *See* 50 *U.S.C.* app. §§ 501–591.

3. Alimony was awarded to the appellant in the "nominal sum" of one dollar per year.

Uniform Reciprocal Enforcement of Support Act.[4] This petition, initiated by and through the Marion County prosecutor's office, was filed in the Superior Court of Orange County, California.

The California court held a hearing during which the appellee raised the issue of paternity.[5] That court ordered the appellant and the child to submit to blood testing. The appellant, who was never even in California with respect to this case, refused to submit to such testing. The California court entered an order on October 14, 1983, denying the appellant's enforcement petition, noting that the appellant refused to submit to a blood test, and finding that the appellee is not the father of the child.

The appellant, in 1987, with the assistance of the Marion County Child Advocate Office, caused the appellee's wages to be attached.[6]

In May, 1988, the appellee filed a motion to terminate child support payments, and, accordingly, a hearing was conducted by the family law master in West Virginia.

At this hearing, the appellee alleged, as he does before this Court, that he observed the appellant having sexual intercourse with another male in February, 1979, and that in April, 1979, when the appellant discovered that she was pregnant, she informed the appellee that he was not the father of the unborn child.

The family law master concluded that the issue of paternity had been settled by the West Virginia circuit court, and that the California court order does not nullify nor modify the circuit court's August 23, 1982 order, compelling the appellee to pay $250 per month child support.

Upon the appellee's petition for review of the family law master's recommended decision, the circuit court required the parties to submit to blood testing. This testing was performed, and, as asserted by the appellant, the results were returned exclusively to the circuit court.[7]

On February 28, 1989, the circuit court entered an order denying the appellee's request to challenge paternity. However, the circuit court found that "by clear and convincing evidence," the appellee proved a "substantial change in circumstances," warranting a change in child support payments. The circuit court further found that in light of what it termed an "expert report," equity requires that child support payments be suspended and paid at a nominal rate.[8] The circuit court determined that an arrearage of $17,000 existed, but ordered monthly payments of only ten dollars. This appeal ensued.

## II

The appellant raises issues concerning whether the circuit court committed reversible error by: (1) suspending the appellee's monthly child support obligation; (2) according full faith and credit to the California court order; and (3) lowering the appellee's child support obligation to only ten dollars per month, thus, effectively cancelling the arrearage of $17,000. Because these issues all relate to each other, they will be addressed together.

---

4. The Revised Uniform Reciprocal Enforcement of Support Act, at the time the appellant filed her petition, was codified in W.Va.Code, 48–9–1 to 48–9–42. That article was repealed in 1986. The Revised Uniform Reciprocal Enforcement of Support Act is now codified in W.Va.Code, 48A–7–1 to 48A–7–41.

5. The appellee maintains that he did not have a chance to contest the paternity issue before the West Virginia circuit court because the final order was entered one day before the date that he believed to be the date of the hearing. However, the appellee was represented at this hearing by his attorney.

6. W.Va.Code, 48A–7–12 [1989] provides: "If this state is acting as an initiating state, the children's advocate shall represent the child in any proceedings under this article." " 'Initiating

state' means a state in which a proceeding pursuant to this or a substantially similar reciprocal law is commenced." W.Va.Code, 48A–7–2(4) [1986].

7. The record in this case does not include the results of this blood testing. The only blood test results included in the record are those of the appellee.

8. Presumably, the "expert report" to which the circuit court refers, contained the results of the blood tests performed on the appellant and the child. The circuit court, in its order, does not elaborate on this point. Furthermore, these results are not included in the record before this Court. See supra note 7.

**450**

■ The appellant contends that the appellee is barred from challenging the issue of paternity because he did not appeal this issue within the then-prescribed period of eight months.[9] We agree with the appellant's contention.

It is a general principle that an "adjudication in a divorce or annulment action concerning the paternity of a child is res judicata as to the husband or wife in any subsequent action or proceeding." Annotation, *Effect, in Subsequent Proceedings, of Paternity Findings or Implications in Divorce or Annulment Decree or in Support or Custody Order Made Incidental Thereto*, 78 A.L.R.3d 846, 853 (1977).

This principle is recognized throughout American jurisdictions. *See De Weese v. Unick*, 102 Cal.App.3d 100, 162 Cal.Rptr. 259 (1980); *Garcia v. Garcia*, 148 Cal. App.2d 147, 306 P.2d 80 (1957); *Johnson v. Johnson*, 395 So.2d 640 (Fla.Dist.Ct.App. 1981); *In re Marriage of Detert*, 391 N.W.2d 707 (Iowa Ct.App.1986); *Baum v. Baum*, 20 Mich.App. 68, 173 N.W.2d 744 (1969); *In re Marriage of Campbell*, 741 S.W.2d 294 (Mo.Ct.App.1987); *Withrow v. Webb*, 53 N.C.App. 67, 280 S.E.2d 22 (1981); *Arnold v. Arnold*, 207 Okla. 352, 249 P.2d 734 (1952); *Com. ex rel. Palchinski v. Palchinski*, 253 Pa.Super. 171, 384 A.2d 1285 (1978); *Johns v. Johns*, 64 Wash.2d 696, 393 P.2d 948 (1964); *E v. E*, 57 Wis.2d 436, 204 N.W.2d 503 (1973). *See also* 24 Am. Jur.2d *Divorce and Separation* § 1099, at 1084 (1983) ("If the paternity of a child is placed in issue in an action for a divorce and is adjudicated, the matter is res judicata as between the husband and wife in any subsequent action or proceeding[.]").

This Court has addressed a challenge to a paternity determination on a similar point. In *N.C. v. W.R.C.*, 173 W.Va. 434, 317 S.E.2d 793 (1984), the parties, following a first divorce from each other, continued to have sexual relations, and then remarried upon learning that the wife was preg-

nant. The parties were then divorced a second time, and the husband was ordered to pay child support. Over eight months after the second divorce order was entered, the husband petitioned the circuit court for relief from paying child support, alleging that he was not the father of the child. This Court addressed the husband's claim in that case as a motion for relief from a final judgment, order, or proceeding.[10] We affirmed the circuit court's decision in *N.C.* that the husband was not entitled to the relief sought because he did not raise "the issue of paternity through appropriate proceedings prior to the final disposition of his second divorce." *Id.*, 173 W.Va. at 438, 317 S.E.2d at 797. *See also Peercy v. Peercy*, 154 Colo. 575, 392 P.2d 609 (1964) (under Rule 60(b), father could not use blood test results which disproved paternity after six months).

We have also recognized that a final order setting alimony and *child support* cannot be collaterally attacked due to an alleged insufficiency of evidence if the period for appeal has expired. Syl. pt. 1, *Robinson v. Robinson*, 169 W.Va. 425, 288 S.E.2d 161 (1982).

"The doctrine of *res judicata* guards the finality of a court's decision." *Cook v. Cook*, 178 W.Va. 322, 324, 359 S.E.2d 342, 344 (1987). In syllabus point 1 of *In re Estate of McIntosh*, 144 W.Va. 583, 109 S.E.2d 153 (1959), this Court reiterated well established legal principles with respect to the doctrine of *res judicata:*

'An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the

---

**9.** At the time of the events in this case, *W.Va.R. App.P.* 3(a) and *W.Va.Code*, 58–5–4, as amended, provided an eight-month appeal period. The appeal period under these provisions is now four months.

**10.** This type of motion involves Rule 60(b) of the *West Virginia Rules of Civil Procedure*, which sets forth six reasons for which a party would be entitled to relief, along with time limitations for each reason.

parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata.*' Point 1, Syllabus, *Sayre's Adm'r v. Harpold et al.,* 33 W.Va. 553 [, 11 S.E. 16 (1890)]. (emphasis in original) *Accord,* syl. pt. 1, *Sattler v. Bailey,* 184 W.Va. 212, 400 S.E.2d 220 (1990); syl. pt. 1, *Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (1983).

The Court of Appeals of North Carolina, in *Withrow v. Webb,* 53 N.C.App. 67, 280 S.E.2d 22 (1981), was confronted with a situation similar to the facts in this case, particularly, an attempt to raise a challenge to paternity determination based upon blood test results five years after the original adjudication. The North Carolina court demonstrated the importance of finality as it relates to issues involving paternity determination.

> Even if the principle of *res judicata* were not applicable, it would seem to us that to grant the motion for a blood-grouping test on this record, would open the door to unwarranted challenges of paternity, violate public policy, and clearly result in irreparable harm to the child whose parents appear to be bent on harassing one another.

*Id.* at 72, 280 S.E.2d at 26.

We agree with this reasoning.[11] If we were to recognize that the appellee could continue to raise the issue of paternity nearly five years after the birth of his putative daughter, then our domestic relations law would be replete with cases in which paternity is denied, and, consequently, child support payments, necessary for the daily needs of children's lives, would never be met.[12]

In the case now before the Court, not only did the appellee not contest the paternity determination within the prescribed period for appeal, but the appellee also *admitted,* in his answer, the appellant's claim that he is the father of the appellant's child.

Accordingly, the issue of paternity determination in this case was a matter that was already adjudicated, and the circuit court committed error by allowing blood testing to be conducted and considered in its February 28, 1989 order.

Although the circuit court, in its order suspending the appellee's monthly child support obligation, made no reference to the California court's order, it is obvious that the circuit court accorded full faith and credit to that court's conclusion that the appellee is not the father of the appellant's child. Accordingly, a brief discussion of the Revised Uniform Reciprocal Enforcement of Support Act, *W.Va.Code,* 48A–7–1 to 48A–7–41, as amended, is necessary.

*W.Va.Code,* 48A–7–26 [1986] provides:

> If the obligor asserts as a defense that he is not the father of the child for whom support is sought and it appears to the court that the defense is not frivolous, and *if both of the parties are present* at the hearing or the proof required in the case indicates that the presence of either or both of the parties is not necessary, the court may adjudicate the paternity issue. Otherwise the court may adjourn the hearing until the paternity issue has been adjudicated.

(emphasis supplied)

As we have stated earlier in this opinion, however, the record indicates that the ap-

---

**11.** In *Michael K.T. v. Tina L.T.,* 182 W.Va. 399, 403, 387 S.E.2d 866, 870 (1989), although we pointed out that *W.Va.Code,* 48A–6–3(a), as amended, allows a trial court to order blood tests to determine paternity, we also held that a trial court "should refuse to admit blood test evidence which would disprove paternity when the individual attempting to disestablish paternity has held himself out to be the father of the child for a sufficient period of time such that disproof of paternity would result in undeniable harm to the child." *Id.,* syl. pt. 3. The doctrine of *res judicata* was not an issue in *Michael K.T.*

**12.** We have recognized that *res judicata* does not bar a *child's* paternity action merely because the mother's paternity action was dismissed with prejudice "when the evidence does not show privity between the mother and the child in the original action nor does the evidence indicate that the child was either a party to the original action or represented by counsel or guardian ad litem in that action." Syl. pt. 5, in part, *State ex rel. Division of Human Services v. Benjamin P.B.,* 183 W.Va. 220, 395 S.E.2d 220 (1990).

pellant was not even in California when the court in that state ordered her and L.D.M. to submit to blood·tests.

■ Furthermore, even though *W.Va. Code*, 48A–7–26 [1986] allows a court to adjudicate the issue of paternity, we have already held that the paternity determination issue in this case had been adjudicated, and, therefore, such determination is *res judicata*. Consequently, *W.Va.Code*, 48A–7–26 [1986] is inapplicable in this case.

With respect to the Revised Uniform Reciprocal Enforcement of Support Act, it has been held: "A finding of paternity in a judgment and decree of dissolution is res judicata, precluding appellant's defense of non-paternity *in a subsequent action for enforcement of child support*." Syl. pt. 1, *State ex rel. Mart v. Mart*, 380 N.W.2d 604 (Minn.Ct.App.1986) (emphasis supplied). *Accord*, syl. pt. 1, *State ex rel. Ondracek v. Blohm*, 363 N.W.2d 113 (Minn.Ct.App. 1985). In *Luedtke v. Koopsma*, 303 N.W.2d 112, 114 (S.D.1981), the Supreme Court of South Dakota pointed out that the appellant in that case "had an opportunity to contest paternity in the original action, but failed to do so.... He therefore should not be heard to complain that he has been precluded from presenting this issue[.] ... Paternity in such a situation is not properly raised in an action to enforce child support obligations." Similarly, the Supreme Court of New Hampshire, in a similar context, has observed: "If the issue of paternity already has been determined against the defendant in another jurisdiction, such a judgment is deemed *res judicata* and generally will be afforded full faith and credit by the responding state." *Ely v. DeRosier*, 123 N.H. 249, 251, 459 A.2d 280, 282 (1983). *See also Odle v. Patrick*, 538 A.2d 770 (Me.1988).

It is apparent in this case that the California court failed to recognize the previous adjudication of paternity by the West Virginia court.

■ In any event, the West Virginia circuit court was not compelled to give full faith and credit to the California court's order. "Full faith and credit is not applicable to support orders rendered under the Uniform Reciprocal Enforcement of Support Act." *Banton v. Mathers*, 159 Ind. App. 634, 635–36, 309 N.E.2d 167, 168, *as modified on denial of reh'g* (1974). This principle is based upon the concept that under the provisions of the Revised Uniform Reciprocal Enforcement of Support Act, "new support orders do not nullify, modify, or supersede the original support decree, but instead provide an additional, supplementary or cumulative remedy." *Thompson v. Thompson*, 366 N.W.2d 845, 847 (S.D.1985). This Court has also recognized that "the remedies provided in our reciprocal dependency laws are in addition to and not in substitution for any other remedies." *Hill v. Hill*, 153 W.Va. 392, 402, 168 S.E.2d 803, 809 (1969). *See generally* annotation, *Construction and Effect of Provision of Uniform Reciprocal Enforcement of Support Act That No Support Order Shall Supersede or Nullify any Other Order*, 31 A.L.R. 4th 347 (1984).

Accordingly, the purpose of the Revised Uniform Reciprocal Enforcement of Support Act, *W.Va.Code*, 48A–7–1 to 48A–7–41, as amended, is to provide an additional, supplementary or cumulative remedy to enforce the original support order in a divorce case. Support orders rendered under the provisions of the Act do not necessarily nullify, modify or supersede the original support order.

Based upon the above discussion, we hold that an adjudication of paternity, which is expressed in a divorce order, is *res judicata* as to the husband and wife in any subsequent proceeding. Therefore, the provisions of *W.Va.Code*, 48A–7–26 [1986], part of ·the Revised Uniform Reciprocal Enforcement of Support Act, *W.Va.Code*, 48A–7–1 to 48A–7–41, as amended, which authorizes the adjudication of paternity under certain circumstances is not applicable if an adjudication of paternity is expressed in the divorce order.

III

It is evident that by lowering the appellee's child support payments to the nominal

sum of only ten dollars per month, the circuit court effectively cancelled the child support arrearage of $17,000 based upon its erroneous consideration of blood test results. Although the circuit court premised its decision upon equitable grounds, because of its erroneous ruling, the arrearage of $17,000 must be reinstated, and the appellee's obligation to pay $250 per month child support must also be reinstated.

As we held in syllabus point 1 of *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987): "Matured installments provided for in a decree, which orders the payment of monthly sums for alimony or child support, stand as 'decretal judgments' against the party charged with the payments."

Moreover, "[t]he authority of the circuit courts to modify alimony or child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support installments." *Id.,* syl. pt. 2.

Furthermore, a modification of the child support award may only be made upon the appropriate determination that a substantial change of circumstances has occurred. *Gardner v. Gardner,* 184 W.Va. 260, 400 S.E.2d 268 (1990). *See also* syl. pt. 7, *Rakes v. Ferguson,* 147 W.Va. 660, 130 S.E.2d 102 (1963) (under *W. Va. Code,* 48-2-15, court may "require accrued and past due support and maintenance to be paid by the judgment debtor in such amounts and installments as the court may determine.").

### IV

Based upon the foregoing, we reverse the February 28, 1989 order of the Circuit Court of Marion County and remand this case to that court for a proceeding consistent with this opinion.

Reversed and remanded.