416 S.E.2d 62

**Mary J. Wadsworth LAUDERBACK, Plaintiff Below, Appellant,**

v.

**Dale L. WADSWORTH, Defendant Below, Appellee.**

**No. 20447.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 22, 1992.

Decided March 20, 1992.

Mark E. Gaydos, William Frame, Wilson, Frame and Metheney, Morgantown, for appellant.

Susan L. Riffle, Brent E. Beveridge, Fairmont, for appellee.

**PER CURIAM:**

The Circuit Court of Marion County certified the following questions on child support arrearage to this Court:

1.   Is the plaintiff estopped from seeking enforcement of an accrued arrearage in child support as a result of a post-divorce agreement accepting the sum of $25,000 for her interest in the parties' jointly owned real estate and for all past and future child support?

2.   Is the plaintiff in such a case entitled to the entire amount of arrearages in one lump sum when she sits on her rights for ten years before enforcing collection of the arrearages?

3.   Is the plaintiff entitled to interest on the arrearages?

The circuit court answered question 1 negatively and questions 2 and 3 affirmatively. After careful review of the record, we find that the circuit court's answers for questions 1 and 3 were correct.  With respect to question 2, we find that although the plaintiff is not precluded from a lump sum award, given the equities, the circuit court should conduct a hearing to determine the

defendant's ability to pay and to order the appropriate payment.

On April 24, 1978, Dale L. Wadsworth and Mary J. Wadsworth (Lauderback) were divorced and Mrs. Lauderback was awarded custody of the parties' four children, then ages 14, 13, 9, and 2, and Mr. Wadsworth was ordered to pay $400 per month in child support. However, Mr. Wadsworth paid no child support and in July 1979, the circuit court found the child support arrearage to be $7,500 and temporarily reduced payments to $300 per month. Despite the court order, Mr. Wadsworth paid no child support. On August 17, 1981, Mr. Wadsworth and Mrs. Lauderback signed an agreement in which Mrs. Lauderback, in exchange for a $25,000 payment from Mr. Wadsworth, (1) released her interest in some jointly owned real estate, and (2) released Mr. Wadsworth from all child support, past, present and future. Mrs. Lauderback maintains that Mr. Wadsworth also promised to help with extraordinary expenses such as school clothes and Christmas.[1]

After the 1981 agreement, Mrs. Lauderback requested help from Mr. Wadsworth twice, once for school clothes and the second time for utility bills. Mr. Wadsworth refused both times.[2] After Mr. Wadsworth refused to buy school clothes, Mrs. Lauderback called the lawyer who drafted the 1981 agreement and was told she had waived all assistance. Because of the 1981 agreement, Mrs. Lauderback did not seek enforcement of the child support order.

However, when in 1990 Mrs. Lauderback sought money to pay her utility bills from the Department of Health and Human Ser-vices, she was referred to the Child Advocate Office. With help from the Child Advocate Office, Mrs. Lauderback sought to enforce the child support order by requesting automatic wage withholding.

The case was referred to a family law master who determined that the 1981 agreement was invalid in so far as it waived child support. The family law master determined that the total past due child support was $45,400. The family law master found that of the $25,000 received by Mrs. Lauderback as a result of the 1981 agreement, $7,500 was a property settlement and $17,500 was for child support.[3] Deducting $17,500, the child support paid in 1981, from $45,400, the past due child support, the family law master found that Mr. Wadsworth owed $27,900 in child support. Using the Child Support Guidelines, the family law master also recommended Mr. Wadsworth pay $300 per month in child support for the one unemancipated child.[4]

Mr. Wadsworth appealed the decision of the family law master to the Circuit Court of Marion County who, upon his own motion, certified three questions concerning child support arrearage to this Court. We find that the circuit court correctly determined that 1981 agreement did not estop Mrs. Lauderback from seeking unpaid child support and that Mrs. Lauderback was entitled to interest on the arrearage. We also find that although Mrs. Lauderback is not precluded from receiving a lump sum, given the equities, the circuit court should conduct a hearing to determine Mr. Wadsworth's ability to pay and to order the appropriate payment either as a lump sum

---

1. The parties present different information concerning the 1981 agreement. Mrs. Lauderback maintains that in 1981, because of Mr. Wadsworth's failure to pay any child support, she was desperate for money and that when she was presented with the incomplete agreement as drafted by Mr. Wadsworth and his lawyer she agreed. Mr. Wadsworth maintains that the 1981 agreement was negotiated by the parties who then went together to a lawyer. Given our holding in Section I, *infra*, we need not address the questions raised concerning the validity of the agreement.

2. Mr. Wadsworth maintains that although he gave Mrs. Lauderback no child support, on various occasions he gave money directly to his children.

3. The property settlement of $7,500 represented one half of the equity ($15,000), that the parties had in a house valued at $30,000.

4. The current amount of child support is noted even though the work sheets showing the child support guidelines calculations were not included as part of the record as required by Syllabus Point 2, *Wyant v. Wyant*, 184 W.Va. 434, 400 S.E.2d 869 (1990).

or from wage withholding or a combination.

### I

■ The first question certified to this Court concerns whether Mrs. Lauderback is estopped from seeking unpaid child support by the 1981 agreement in which she waived all past, present and future child support from Mr. Wadsworth.

■ In *Kimble v. Kimble*, 176 W.Va. 45, 341 S.E.2d 420 (1986), we discussed a similar situation wherein the father, in exchange for termination of his child support obligations, consented to the adoption of his child. Thereafter Mr. Kimble stopped paying child support and about one year later, Mrs. Kimble petitioned for delinquent child support payments (the adoption had not occurred) and requested an increase in child support. In Syllabus Point 1, *Kimble, id.,* we held that:

> The execution of consent to the adoption of a child by its custodial parent and the custodial parent's current spouse is alone insufficient to terminate a noncustodial parent's decretal obligation to make child support payments.

*In accord Stevens v. Stevens*, 186 W.Va. 259, 412 S.E.2d 257 (1991). Our holding requiring Mr. Kimble to pay child support was based on the fact that "[T]he parties cannot by contract alter or change the terms of [a divorce] decree." *Kimble, id.* 176 W.Va. at 49, 341 S.E.2d at 424 (quoting *Bailey v. Bailey*, 127 W.Va. 826, 829, 35 S.E.2d 81, 83 (1945)). In Syllabus Point 2, *Kimble, supra,* we concluded:

> A decretal child support obligation may not be modified, suspended, or terminated by an agreement between the parties to the divorce decree.

"The welfare and interest of minor children must be protected by the courts. They are not independently represented in connection with any property settlement agreement and they are not parties to such an agreement." *Stewart v. Stewart*, 177 W.Va. 253, 351 S.E.2d 439 (1986) (*Stewart I*) (quoting *State ex rel. Trembly v. Whiston*, 159 W.Va. 298, 302, 220 S.E.2d 690, 693.) *See also, Stewart v. Stewart*, 183 W.Va. 307, 310, 395 S.E.2d 551, 554 (1990) (affirming our holding in *Stewart I*, that Mrs. Stewart was entitled to child support and that "no consideration" be given to the real estate equity); *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 n. 2 (1987) (holding that "only a court may modify a decree ordering the payment of support").

We also note that the circuit court's authority to modify child support is prospective only. Syllabus Point 2, in part, *Goff, id.; Farley v. Farley*, 186 W.Va. 263, 266, 412 S.E.2d 261, 264 (1991); Syllabus Point 3, *Nancy Darlene M. v. James Lee M., Jr.*, 184 W.Va. 447, 400 S.E.2d 882 (1990).

In Syllabus Point 3, *Wyatt v. Wyatt*, 185 W.Va. 472, 408 S.E.2d 51 (1991), we said:

> The duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support.

In the present case, we find that the 1981 agreement between Mr. Wadsworth and Mrs. Lauderback, in which Mrs. Lauderback waived her interest in jointly titled real estate and all past and future child support payments by Mr. Wadsworth, did not modify, suspend or terminate Mr. Wadsworth's obligation to pay child support.[5] We also note that the circuit court's authority to modify a child support award is prospective only.

Based on our holding in *Kimble*, we agree with the negative answer to the first certified question given by the circuit court that "the plaintiff [Mrs. Lauderback] is not estopped from enforcing an accrued arrearage excepting the portion of the $25,000 payment which was to be credited for child support."

---

5. Mr. Wadsworth contends that his direct payments to his children should be considered to reduce the child support arrearage. Although this issue was not directly raised by the certified questions, in *Kimble*, we noted that "The father's obligation to pay child support is only satisfied by making payments to the mother...." *Kimble, supra,* 176 W.Va. at 50, 341 S.E.2d at 425 (quoting *Bordelon v. Bordelon*, 380 So.2d 110, 112 (La.Ct.App.1979)).

## II

The second certified question concerns whether Mrs. Lauderback is entitled to a lump sum payment of the entire amount of child support arrearage. In Syllabus Point 1, *Goff*, supra, we said:

> Matured installments provided for in a decree, which orders the payment of monthly sums for alimony and child support, stand as 'decretal judgment' against the party charged with the payments.

*See* Syllabus Point 1, *Zanke v. Zanke*, 185 W.Va. 1, 404 S.E.2d 92 (1991); *Sauls v. Howell,* 172 W.Va. 528, 309 S.E.2d 26 (1983); *Korczyk v. Solonka,* 130 W.Va. 211, 42 S.E.2d 814 (1947); *Holcomb v. Holcomb,* 122 W.Va. 293, 8 S.E.2d 889 (1940).

In the present case, Mr. Wadsworth argues that Mrs. Lauderback is not entitled to the total arrearage in one lump sum because she did not pursue her remedies in a timely fashion. In *Korczyk*, we found that enforcement of a "decretal judgment can be barred by the statute of limitations, but its enforcement may not be barred by laches." *Korczyk, supra,* 130 W.Va. at 218, 42 S.E.2d at 819. *See also, Zanke, supra,* 185 W.Va. at 3, 404 S.E.2d at 94. In *Korczyk*, we upheld, the circuit court's 1945 award of $11,464.20, including interest, based on the non-payment of $40 per month under a support order entered in 1929.

In Syllabus Point 2, in part, *Goff, supra,* we said:

> [A]bsent a showing of fraud or other judicially cognizable circumstances in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support installments.

In *Zanke*, we noted that the fraud or other cognizable circumstance that would authorize the modification or cancellation of accrued support payment "must relate to the

procuring of the *original award." Zanke, supra,* 185 W.Va. at 4, 404 S.E.2d at 95.

In the present case, we find that Mrs. Lauderback is not precluded from receiving a lump sum for the arrearage in child support and therefore, we disagree with the circuit court's answer to the second certified question.

However, based on the record, we decline at this time to require Mr. Wadsworth to pay in a lump sum the entire child support arrearage of $27,900. We are aware of the custodial parent's substantial need for child support; indeed, Mrs. Lauderback contacted the Department of Health and Human Services for assistance with her utility bills. Given the relative equities of the parties including a consideration of the welfare of the unemancipated child, we find that the circuit court should conduct a hearing to determine the extent of Mr. Wadsworth's ability to make a lump sum payment. The circuit court, to the extent of Mr. Wadsworth's ability to pay, should order a lump sum payment and any arrearage not paid immediately should be withheld from Mr. Wadsworth's income or wages.

## III

The final certified question concerns the accrual of interest on the arrearage. The circuit court believes that Mrs. Lauderback was entitled to interest and we agree that Mrs. Lauderback is entitled to statutory interest on each unpaid installment from the date the payment matured to the date the total judgment is rendered. In Syllabus Point 5, *Goff, supra,* we said:

> Mature alimony and child support installments are judgments for money which accrue statutory interest from the date the payments are due.

*In accord* Syllabus Point 3, *Zanke, supra.*

In *Goff,* we found that under *W.Va. Code,* 56–6–31 [1981][6], "every judgment

---

6. *W.Va.Code,* 56–6–31 [1981], provides:

Except where it is otherwise provided by law, every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not: Provided, that if the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of such special or liquidated damages shall bear interest from the date the right to bring the same shall have

for the payment of money bears interest from the date of ascertainment...." *Goff, id.* 177 W.Va. at 747, 356 S.E.2d at 501. Thus we find that Mrs. Lauderback is entitled to interest calculated on the amounts as each accrued until the date of final judgment.

Based on the reasoning above, we agree with the circuit court's answers to questions 1 and 3 and we disagree with the circuit court's answer to question 2 and remand the case for proceedings consistent with this opinion.

Certified Questions Answered.

accrued, as determined by the court. Special damages includes lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, as determined by the court. The rate of interest shall be ten dollars upon one hundred dollars per annum, and proportionately for a greater or lesser sum, or for a longer or shorter time, notwithstanding any other provisions of law.

Before the 10 percent rate was set in 1981, the appropriate rate was 6 percent. *Zanke, supra,* 185 W.Va. at 4, 404 S.E.2d at 95 n. 8.