425 S.E.2d 152

**Anna Marie JEFFREY, Plaintiff
Below, Appellant,**

v.

**Mark JEFFREY, Defendant
Below, Appellee.**

No. 20922.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 22, 1992.

Decided Dec. 14, 1992.

Norman Googel, Welch, for appellant.

Wilbert A. Payne, Payne & Payne, Beckley, for appellee.

WORKMAN, Justice:

Anna Marie Jeffrey appeals from a July 30, 1991, order of the Circuit Court of Wyoming County in which the lower court found that it lacked jurisdiction to modify child support due to the existence of a prior proceeding in Tennessee under the Uniform Reciprocal Enforcement of Support Act (hereinafter referred to as "URESA"). The Appellant also contends that the lower court erred by refusing to consider her claim for reimbursement for past child support expenditures. We conclude that West Virginia maintains continuing jurisdiction to modify child support and to entertain related issues, such as reimbursement for past child support expenditures, notwithstanding the Tennessee URESA proceeding.

I.

On January 27, 1981, a final divorce order was entered in the Circuit Court of Wyoming County granting a divorce to the Appellant and the Appellee, Mark Jeffrey. That order granted custody of the parties' three children to the Appellant with reasonable visitation rights to the Appellee. With regard to child support, the order provided that "the child support in this action will be determined at a later date as the defendant [Mark Jeffrey] is presently unemployed."

Subsequent to the divorce, the Appellant resided with the children in West Virginia, and the Appellee resided with his parents in West Virginia for several years. Mr. Jeffrey's employment while living with his parents apparently consisted only of odd jobs on a temporary basis. Mr. Jeffrey remarried on November 23, 1985, relocated to Tennessee in November 1986, and began employment with the Fiber Glass Factory in Nashville, Tennessee, earning approximately $1,100 per month. Upon discovering that Mr. Jeffrey had become gainfully employed, the Appellant initiated a URESA petition through the West Virginia Child Advocate's Office in an attempt to obtain a child support order against Mr. Jeffrey in Tennessee. On July 19, 1989, a URESA order was entered in Tennessee requiring Mr. Jeffrey to pay $105 per week in child support.

On August 14, 1989, Mr. Jeffrey filed a petition in the lower court seeking to modify custody of the parties' oldest child, Keith Dwayne Jeffrey, then thirteen years of age.[1] On November 6, 1989, the Appellant filed an answer, affirmative defenses, and a cross-petition in response to Mr. Jeffrey's original petition. In her cross-petition, the Appellant requested that the lower court modify current and back child support in accordance with West Virginia child support guidelines. She also requested reimbursement for previous expenditures she had made for the support of the children from the point in time when Mr. Jeffrey became employed in November 1986.

During a November 21, 1989, hearing before Family Law Master Gloria M. Stephens, the following ruling was made regarding the Tennessee URESA order:

> I am going to rule that this [the URESA order] will be made an exhibit ..., and that this matter has already been adjudicated as far as child support in Tennessee, and that this court would not have jurisdiction to modify that order that is already in existence.

---

1. While the issues before this Court arose from the petition to modify custody, the Appellant appeals the lower court's modification of custody only insofar as the lower court refused to modify child support based upon its determination of lack of jurisdiction.

The family law master consequently limited the evidence adduced at the hearing to issues of custody and visitation. The Appellant was not permitted to present evidence of the Appellee's current or previous child support obligations.

Subsequent to that November 21, 1989, hearing, Family Law Master Stephens granted Mr. Jeffrey's petition to modify custody of the oldest child and ruled that the change of custody would not occur until the end of the school year in June 1990. No findings regarding child support were made. Mr. Jeffrey thereafter filed a new URESA petition in Tennessee seeking to modify child support based upon the planned change of custody. Thus, on January 23, 1990, a second URESA order was entered in Tennessee which reduced Mr. Jeffrey's child support obligation from $105 per week for the three children to $300 per month for the two children who were to remain with the Appellant. Although the actual change of custody would not occur until June 1990, the new order was effective January 1, 1990. Upon learning of this modification, the Appellant filed an amended cross-petition requesting Family Law Master Stephens to assume jurisdiction over the issue of Mr. Jeffrey's child support obligations. Again, however, the family law master refused to hear evidence regarding child support and restated her previous position that she did not have jurisdiction to modify child support due to the existence of the Tennessee URESA order.

On December 4, 1990, the Appellant filed a petition for review of the family law master's findings with the Circuit Court of Wyoming County. On March 4, 1991, the lower court entered the family law master's recommended order. Upon the Appellant's March 13, 1991, "Motion to Amend or Reconsider Judgment," the lower court permitted an opportunity for oral argument and the presentation of briefs. The lower court entered its final order of July 30, 1991, affirming the recommendations of Family Law Master Stephens and the disavowal of jurisdiction.

## II.

The stated purposes of the West Virginia URESA statute, West Virginia Code §§ 48A–7–1 to –41 (1992) are "to improve and extend by reciprocal legislation the enforcement of duties of support." W.Va.Code § 48A–7–1.[2] Furthermore, the remedies provided through URESA "are in addition to and not in substitution for any other remedies." W.Va.Code § 48A–7–3. A West Virginia support order, as explained in the antisupersession clause of the URESA legislation, is not to be nullified by a support order made by a court of another state pursuant to a URESA proceeding. W.Va.Code § 48A–7–29a. URESA constitutes a national effort to establish a reciprocal arrangement among the states with regard to enforcement of child support obligations. Our statutes, similar in most respects to those of other states, are designed to permit West Virginia to engage in these reciprocal arrangements with other states using the same or similar statutory framework.

The lower court's conclusion that it lacked jurisdiction to entertain evidence regarding modification of child support due to the existence of a Tennessee URESA order is contrary to the intent of the URESA legislation. Upon its initial acquisition of jurisdiction in the divorce proceedings of 1981, the lower court obtained continuing subject matter jurisdiction over the issues involved, specifically including child support. *See State ex rel. Ravitz v. Fox,* 166 W.Va. 194, 273 S.E.2d 370 (1980). As explained above, the lower court even stated in its divorce order "that the child support in this action will be determined at a later

---

**2.** The act presently dispositive of these issues in West Virginia is formally entitled the Revised Uniform Reciprocal Enforcement of Support Act, or "RURESA." While the revisions which form the distinction between the original URESA and the present RURESA are of no conse-

quence in this case, we do wish to prevent any confusion of the issues which may be created by courts varying uses of the acronyms URESA and RURESA. For simplicity's sake, we will refer to the governing act as URESA.

date as the defendant is presently unemployed."[3]

■ We explained the following in syllabus point 1 of *Ravitz:*

Once the circuit court's jurisdiction of the person attaches in a divorce action, it continues throughout all subsequent proceedings which arise out of the original cause of action, including matters relating to alimony, child support, and custody, and a party may not avoid the continuing jurisdiction of the trial court to modify orders concerning alimony, child support, and custody by moving outside the geographical jurisdiction of this State.

166 W.Va. at 194, 273 S.E.2d at 370. In *Ravitz,* after obtaining their divorce in West Virginia, the parties moved out of this state. The wife first initiated a modification proceeding in New Jersey and later attempted to initiate modification proceedings in the original forum of West Virginia. The husband challenged the West Virginia court's jurisdiction, contending that the New Jersey modification of child support had divested West Virginia of jurisdiction over both the parties and the subject matter. *Id.* at 197, 273 S.E.2d at 372. We concluded that the New Jersey action on the issue did not eliminate the West Virginia court's authority to entertain the modification issue. 166 W.Va. at 199, 273 S.E.2d at 374.

The principles espoused in *Ravitz,* a case decided without reference to the URESA legislation, are bolstered by the language of the URESA statutory framework. Under URESA, we cannot conclude that the entry of the Tennessee URESA order superseded or nullified the jurisdiction of the West Virginia court. Such a result would be in direct contradiction of the antisupersession clause of the URESA legislation, West Virginia Code § 48A–7–29a, which provides as follows:

A support order made by a court of this state pursuant to this article does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar law or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against amounts accruing or accrued for the same period under any support order made by the court of this state.

■ In *Nancy Darlene M. v. James Lee M., Jr.,* 184 W.Va. 447, 400 S.E.2d 882 (1990), we addressed the issue of the full

---

**3.** A child support obligation should, as a general rule, always be established at the outset, except in the most extraordinary of circumstances. An obligor who is unemployed may still owe support to his or her child or children. In such cases, the court or family law master must determine whether income should be "attributed" to the obligor under the state guidelines for child support awards, set forth in 6 W.Va.C.S.R. §§ 78–16–1 to 78–16–20 (1988). If a determination is made that "a limitation on income is not justified in that it is a result of a self-induced decline in income, a refusal to occupy time profitably, or an unwillingness to accept employment and earn an adequate sum, the court or master may consider evidence establishing the support obligor's earning capacity in the local job market, and may attribute income to such obligor." 6 W.Va.C.S.R. 78–16–4.1.2 [1988]. In the alternative, if an obligor is remarried and is "unemployed, underemployed or is otherwise working below full earning capacity," the court or master may attribute income in the amount which can be earned working full-

time at a job paying the current minimum wage. 6 W.Va.C.S.R. 78–16–4.1.3.

Another means by which child support may be established is through ascertainment of the amount of aid to dependent children the child is receiving. West Virginia Code § 48A–4–3 (1992) provides that a family law master should prepare a default order and fix an amount of child support even where the obligor has been served with notice but is not present at the hearing. In such case, child support should be fixed "in an amount at least equal to the amount paid as public assistance ..." or an amount equal to what the obligee would receive as public assistance if the obligee were eligible, unless the family law master has sufficient information to determine an amount to be fixed in accordance with child support guidelines. *See also Wyatt v. Wyatt,* 185 W.Va. 472, 408 S.E.2d 51 (1991) regarding benefits paid through Aid to Families with Dependent Children and the establishment of an appropriate amount of child support when such benefits contribute to or constitute the family's income.

faith and credit to be given to a California order under URESA regarding an issue of paternity. In examining the reciprocal nature of the URESA legislation, we noted that "the purpose of the Revised Uniform Reciprocal Enforcement of Support Act, *W.Va.Code,* 48A–7–1 to 48A–7–41, as amended, is to provide an additional, supplementary or cumulative remedy to enforce the original support order in a divorce case." 184 W.Va. at 452, 400 S.E.2d at 887. Furthermore, we stated that "[s]upport orders rendered under the provisions of the Act do not necessarily nullify, modify or supersede the original support order." *Id.* at 452, 400 S.E.2d at 887; *see generally,* Andrea G. Nadel, Annotation, *Construction and Effect of Provision of Uniform Reciprocal Enforcement of Support Act that No Support Order Shall Supersede or Nullify any Other Order,* 31 A.L.R.4th 347 (1984). Other courts considering an antisupersession provision have recognized that the entry of a URESA order in one state does not divest the initiating state of its continuing authority to modify child support in a subsequent proceeding. *See Earley v. Earley,* 165 Ga. App. 483, 300 S.E.2d 814 (1983); *Banton v. Mathers,* 159 Ind.App. 634, 309 N.E.2d 167 (1974); *Campbell v. Jenne,* 172 Mont. 219, 563 P.2d 574 (1977); *State v. Borchers,* 805 S.W.2d 880 (Tex.App.1991); *Kammersell v. Kammersell,* 792 P.2d 496 (Utah App. 1990); *Oglesby v. Oglesby,* 29 Utah 2d 419, 510 P.2d 1106 (1973).

The thrust of these decisions has been, as we intimated in *Nancy Darlene M.,* that support orders obtained through URESA do not limit an initiating state from continuing to exercise authority over support determinations. In *Borchers,* the Court of Appeals of Texas discussed the principles of URESA in its analysis of an issue of alleged modification of an original support order. In holding that a foreign state's support order entered in a URESA action did not modify the initiating state's support order, the court explained that "[t]he language of the statute itself contemplates the contemporaneous existence of two valid support orders providing for child support payments in different amounts." 805

S.W.2d at 881–82. The *Borchers* court also explained that "URESA does not provide for the modification of a previous order but instead provides cumulative additional remedies. URESA proceedings are ancillary proceedings which do not preclude a party from an action to enforce the original judgment." *Id.* at 882. Thus, the fact that the West Virginia court in the present case made no specific monetary determination of child support in its original order is of no consequence. While the West Virginia court did state in its order that the child support would be determined at a later date due to Mr. Jeffrey's employment status, it would have retained jurisdiction implicitly even if no such reference had been made. As the *Borchers* court emphasized, URESA contemplates an ancillary, cumulative remedy. In effect, URESA adds to previously existing remedies and cannot, through any means, be interpreted to detract therefrom.

We consequently adopt the position that the entry of a URESA order in a foreign state does not prevent or in any manner restrict West Virginia, as the initiating state, from continuing to exercise jurisdiction in a subsequent petition to modify. Any other construction of the antisupersession clause contained in West Virginia Code § 48A–7–29a would be contrary to the intent of the URESA legislation. As we have previously explained, " '[i]n ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.' Syl. Pt. 2, *Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. Pt. 3, *State ex rel. Fetters v. Hott,* 173 W.Va. 502, 318 S.E.2d 446 (1984). As addressed above, the URESA legislation is designed to enhance the ability of the states to engage in a cooperative effort to order and enforce child support. Whenever an attempt is made to effectuate this reciprocal arrangement intended by the drafters of this legislation, the antisupersession clause must be interpreted in the manner explained above. We conclude, therefore, that West Virginia maintains

continuing jurisdiction in the present case to modify child support and to entertain related issues such as reimbursement for past child support expenditures, notwithstanding the Tennessee URESA proceeding.[4]

Reversed and remanded.

---

**4.** As referenced in the antisupersession clause, any amount paid for a particular period pursuant to the Tennessee order shall be credited against amounts accruing for that same period pursuant to any West Virginia order.