397 S.E.2d 916

**Vicki Kay HENDERSON**

v.

**David Albert HENDERSON.**

No. 19155.

Supreme Court of Appeals of West Virginia.

July 20, 1990.

LaVerne Sweeney, Grafton, for Vicki Kay Henderson.

Gregory T. Hinton, Fairmont, for David Albert Henderson.

PER CURIAM:

This case is before the Court upon the appeal of Vicki Kay Henderson, the plaintiff below, from a final order of the Circuit Court of Marion County. The appellee is David Albert Henderson. We have reviewed the petition for appeal, briefs of the parties, and what is apparently only a par-

tial portion of the record in this case. We are of the opinion that this case should be affirmed, in part, reversed, in part, and remanded for further proceedings.

## I

The appellant and appellee were married on September 3, 1966. Three children, two of which were minors at the time of the original complaint, were born of the marriage.

The appellant filed for divorce in the Circuit Court of Marion County.

Following a hearing before the circuit court, the circuit court entered a final order awarding the appellant custody of the children, $125 per month per child as child support, and $250 per month alimony. The circuit court's final order also required the appellee to pay the appellant $25,000 in exchange for the appellant's one-half interest in the jointly-owned marital residence. Although there was testimony that the value of the marital residence is $60,000, the circuit court noted in its final order that the appellee had "made more significant contributions to the realty."

The appellant assigns several errors on the part of the circuit court and the appellee cross-assigns errors, only one of which we address herein.

## II

The appellant contends that the circuit court erred by not following child support guidelines in determining the child support award to the appellant.

As stated previously, the circuit court's final order awarded child support to the appellant in the amount of $125 per month per child. The circuit court's order, however, did not set forth reasons as to how the child support award was reached. Rather, the circuit court's final order merely states: "4. The defendant shall pay to the plaintiff $125.00 per month per child as child support regardless of whether the children are with the plaintiff or defendant."

*W.Va.Code,* 48A–2–8 [1986], which was in effect at the time the final order was entered in this case, provided, in relevant part:

(a) On or before the first day of October, one thousand nine hundred eighty-seven, the director of the child advocate office shall, by legislative rule, establish guidelines for child support award amounts so as to ensure greater uniformity by those persons who make child support recommendations and enter child support orders, and to increase predictability for parents, children and other persons who are directly affected by child support orders. *Such guidelines shall be followed by* the children's advocate, the family law master and *the circuit court unless,* in each instance, *the* advocate, master or *judge sets forth, in writing, reasons for not following the guidelines in the particular case involved.* Notwithstanding the existence of such guidelines, individual cases will still be considered on their own merits.

(emphasis supplied) [1]

In *Holley v. Holley,* 181 W.Va. 396, 382 S.E.2d 590 (1989), we applied this statutory

---

1. *W.Va.Code,* 48A–2–8 was amended in 1989. Subsection (a) now provides:

(a) The director of the child advocate office shall, by legislative rule, establish guidelines for child support award amounts so as to ensure greater uniformity by those persons who make child support recommendations and enter child support orders, and to increase predictability for parents, children and other persons who are directly affected by child support orders. There shall be a rebuttable presumption, in any proceeding before a family law master or circuit court judge for the award of child support, that the amount of the award which would result from the appli-

cation of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case. The guidelines shall not be followed:

(1) When the child support award proposed to be made pursuant to the guidelines has been disclosed to the parties and each party has made a knowing and intelligent waiver of said amount, and the support obligors have entered into an agreement which provides for

provision, and, in the syllabus thereto, we held:

> When a family law master or a circuit court enters an order awarding or modifying child support, the amount of the child support shall be in accordance with the established state guidelines, set forth in 6 *W.Va. Code of State Rules* §§ 78–16–1 to 78–16–20 (1988), unless the master or the court sets forth, in writing, specific reasons for not following the guidelines in the particular case involved. *W.Va. Code*, 48A–2–8(a), as amended.

The state guidelines alluded to, which are set forth in 6 *W.Va. Code of State Rules* §§ 78–16–1 to 78–16–20 (1988), are designed "to ensure greater uniformity by those persons who make child support recommendations and enter child support orders and to increase predictability for parents, children, and other persons who are directly affected by child support orders." § 78–16–1.1.[2]

Recently, in *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990), we discussed in detail some of the specific provisions of the formula for establishing child support obligations. Particularly, our concern in *Bettinger* centered around the standard of living adjustment (SOLA) percentages provided by the guidelines.

We pointed out that "[u]nder the child support formula, there are two calculations for child support. The first calculation is to determine the primary child support, which essentially covers the basic needs of the children. The SOLA calculation is then made based on defined percentages for the number of children." *Id.*, syl. pt. 10, in part. We then noted that:

6 W. Va. C.S.R. § 78–16–2.7.2 of the child support guidelines allows a family law master or circuit court, in the exercise of sound discretion, to apply less than the full SOLA percentages for child support if one support obligor has a discretionary income above $6,000 a month or both support obligors have a combined discretionary income of $8,000 per month.

*Id.* syl. pt. 11.

The appellant contends that under the guidelines, the child support award, for both minor children, should have been $602.90 per month.[3] From the abbreviated record before us, we are unable to determine whether the specific amount calculated by the appellant is accurate under a correct application of the guidelines.

In any event, it is clear that the guidelines were not followed by the circuit court in its final order. Although the guidelines may not be appropriate for every case, the guidelines specifically spell out what should be done in situations where the formula for a child support award is disregarded. 6 *W.Va. Code of State Rules* § 78–16–19.1 provides:

> 19.1. If, after computing the amount of a child support award in accordance with the provisions of this legislative rule, the court or master determines that the application of support guidelines are inappropriate as being contrary to the best interests of the children and the parties, the court or master may disregard the formula and not follow the guidelines. In such instance, the court or master *shall set forth, in writing, the*

---

the custody and support of the child or children of the parties; or

   (2) When the child support award proposed to be made pursuant to the guidelines would be contrary to the best interests of the child or children, or contrary to the best interests of the parties.

**2.** Federal law requires the establishment of such guidelines, either by judicial or administrative action. 42 *U.S.C.* § 667 (1988). *See also* 45 *C.F.R.* § 302.56 (1989).

**3.** The appellant points out that a *pendente lite* order, entered on October 9, 1986, awarded the

appellant and *one* child $750 per month. This award did not specify whether it was alimony or child support. The appellant maintains that if the amount awarded in the *pendente lite* order was not an abuse of discretion, then the amount awarded in the final order would be. We are unable to address the merits of this contention in light of the fact that: (1) we cannot determine what portion of the $750 was for child support; and (2) as stated in our holding, the circuit court did not utilize the child support guidelines.

*reasons for not following the guidelines in the particular case involved.*

(emphasis supplied) *See also* syl., *Holley.*

In this case, not only did the circuit court fail to follow the child support guidelines, it did not even set forth, in writing, its reasons for not doing so.[4] Focusing on the legislature's intention to provide children with "the level of living which [they] would enjoy if they were living in a household with both parents present," as stated in *W.Va.Code*, 48A–2–8(b) [1986, 1989], we recently expounded on this requirement of setting forth reasons for not following the guidelines.

A decision not to follow the SOLA percentages must be undertaken in light of the legislative preference in W. Va. Code, 48A–2–8(b) (1989), that child support should be keyed to 'the level of living such children would enjoy if they were living in a household with both parents present.' If the family law master or circuit court determines that SOLA percentages under 6 W. Va. C.S.R. § 78–16–2.7.2 should not be used, an explanation must be given.

Syl. pt. 12, *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990).

Accordingly, the child support award must be determined following the child support guidelines, or reasons for not following such guidelines must be set forth.

### III

In addition to the primary matter raised in this appeal, relating to child support, the appellant also raises numerous other errors on the part of the circuit court, including issues involving: contumacious contempt on the part of the appellee; repayment of arrearages by the appellee; interest accu-mulation; transcript costs; and valuation of the marital residence.

Similarly, the appellee cross-assigns as error the circuit court's decision to deny the appellee's motion to amend his pleadings to conform to the evidence as well as the circuit court's award of alimony despite the evidence that the appellant had committed adultery.

We are unable to determine the specific facts related to these assignments due to an incomplete record before this Court.[5]

In syllabus points 4 and 5 of *Pozzie v. Prather*, 151 W.Va. 880, 157 S.E.2d 625 (1967), we held:

4. An appellant or plaintiff in error must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

5. When the alleged errors of the trial court involve the sufficiency of the proof and the testimony upon which the judgment of the trial court is based is not made a part of the record for appellate purposes, the appellate court must presume that the judgment of the trial court is correct and warranted by the testimony.

Accordingly, we decline to decide the assigned errors with respect to these issues.

### IV

Consistent with the foregoing, the judgment of the Circuit Court of Marion County

---

4. We recognize that the proceedings before the circuit court in this case took place before the effective date of the child support guidelines, May 2, 1988. However, the guidelines were in effect at the time the final order was entered.

5. Following the oral argument of this case, the parties were notified by the clerk of this Court that the record before us was incomplete. Apparently, in response, a transcript of *partial* proceedings before the circuit court was filed with this Court. This abbreviated transcript merely addressed the issue of the appellee's assertion that the appellant had committed adultery. Counsel for the appellant, in a reply brief, also attached two nonconsecutive pages from a previous hearing which addressed the value of the marital residence. This, too, is incomplete. Nothing more in the nature of testimony was submitted on this case.

is affirmed, in part, reversed, in part, and remanded to that court for further proceedings consistent with this opinion.

Affirmed, in part; reversed, in part, and remanded.