432 S.E.2d 538

**Karen P. ZALESKI, Now Known as Karen P. Hein, Plaintiff Below, Appellant,**

**v.**

**Robert J. ZALESKI, Defendant Below, Appellee.**

**No. 21544.**

Supreme Court of Appeals of West Virginia.

Submitted May 4, 1993.

Decided June 24, 1993.

Arch W. Riley, Riley & Riley, Wheeling, for appellant.

M. Jane Glauser, Seibert, Kasserman, Farnsworth, Gillenwater, Glauser & Richardson, Wheeling, for appellee.

PER CURIAM:

This is an appeal by Karen P. Zaleski from an order of the Circuit Court of Ohio County which reduced a child support award made to her by a family law master. The appellant contends that in reducing the child support award from $5,104.75 a month to $3,300.00 a month, the circuit court erred. After reviewing the record and the questions presented, this Court agrees. Accordingly, the judgment of the Circuit Court of Ohio County is reversed.

The appellant, Karen P. Zaleski, now Karen P. Hein, and Robert J. Zaleski, an orthopedic surgeon, were divorced on July 6, 1988. At the time of the divorce, the parties had three infant children, and the circuit court, in granting the divorce, placed the children in the custody of the appellant. The circuit court also ordered Robert J. Zaleski to pay $2,500.00 per month child support for eleven months.

Almost immediately after entry of the original order, Robert J. Zaleski filed a petition to modify the child support award, and the matter was referred to a family law master.

The family law master rendered a report on the modification petition on June 22, 1989. In that report, he ruled that only $6,000.00 of Robert J. Zaleski's monthly income should be subjected to the child support calculation. The imposition of the $6,000.00 cap on income subject to the calculation had the effect of modifying the original child support award from $2,500.00 per month to $2,445.00 per month.[1]

On August 31, 1989, the Circuit Court of Ohio County affirmed the family law mas-

---

[1]. Legal authority for subjecting no more than $6,000.00 of monthly income to the child support formula is found in 6 W.Va.C.S.R. § 78–16–7.2.2, which is discussed in the body of the opinion. As indicated in *Bettinger v. Bettinger,* which is also discussed in the body of the opinion, the Rule does not require a family law master to consider only the first $6,000.00 of monthly income in setting child support. In spite of the use of the word "cap" in some of the literature relating to the calculation of child support, it does not, in effect, "cap" the amount which may be considered at $6,000.00 per month. Rather, it allows a master or court, in the exercise of sound discretion, and after considering various factors discussed in the body of this case, to limit the amount of monthly income subject to the formula where the discretionary income of one of the support obligors exceeds $6,000.00 per month.

ter's findings and affirmed the modification of the child support payable.

On August 27, 1989, the appellant married Albert Carl Hein and moved with the three children to Mr. Hein's residence located in Arnold, Maryland. To prepare the house to accommodate the appellant and the three children, Mr. Hein incurred substantial renovation expenses.

After moving to Maryland, the appellant obtained work on a part-time basis and also worked at obtaining a Master's in Business Administration degree at Loyola University in Baltimore, Maryland. She received the MBA degree in May, 1990.

In January, 1991, the appellant began temporary full-time work as assistant to the president of the University of Maryland at a salary of $25,000.00 per year.

As a result of the alterations in her life, the appellant, on May 15, 1991, petitioned the Circuit Court of Ohio County to amend the child support award for her children.

A hearing was conducted on the motion to modify the child support award by a family law master on August 20, 1991. On February 10, 1992, the law master, after examining the evidence developed at the hearing, filed a report and recommended decision with the Circuit Court of Ohio County. In the report, the law master noted that Dr. Zaleski's annual income had increased from $211,300.00 in 1988 to $232,562.00 in 1989 to $371,437.00 in 1990. The master found that, based upon the testimony of Dr. Zaleski, there would appear to be no realistic expectation of a diminution of income. The master concluded:

I find that it is appropriate to consider Dr. Zaleski's net monthly income at $22,000.00 as he earned in 1990, and as no realistic expectation of diminution of income is anticipated.

I further find that based upon her education and employment experience, Mrs. Hein would be able to obtain employment netting approximately $2,000.00 per month.

After noting that Dr. Zaleski should be given credit for monthly expenses in the amount of approximately $8,000.00, the family law master proceeded to find:

Based upon the foregoing findings, I further find that Dr. Zaleski has $14,000.00 available for child support calculation under the Melson Formula and to which no cap should apply and to which no further offset should be made

.    .    .    .    .

Calculating the Melson Formula under the foregoing findings, I find that child support should be set in the amount of $5,104.75 per month, according to the child support calculation which is attached hereto and to be deemed a part hereof.

On February 24, 1992, Robert J. Zaleski petitioned the circuit court to review the master's findings. The court granted the petition and, after reviewing the evidence, reduced the master's recommended award of $5,104.75 per month for eleven months to $3,300.00 per month for eleven months. In reducing the award, the court stated:

The Court concludes that the Family Law Master erred in the calculation of the Melson formula, failing to apply the maximum income cap as provided by 6 WVCSR 78–16.2.6, and in the calculation of the parties' child support expenses.... However, the Court is also of the opinion that given this Court's last order on the issue of child support being in 1986, an increase of child support is warranted. The Court concludes that, given the information submitted at the hearing, the monthly child support for each child should be $1,100 per month for a total of $3,300.00.

On appeal, the appellant claims that because the family law master's determination of Robert J. Zaleski's child support obligation under the formula was based upon substantial evidence on the record as a whole and did not involve an abuse of discretion, the circuit court erred by reducing the master's support award.

The appellant also claims that the family law master correctly used the "SOLA" or "standard of living adjustment" percentages of the formula in determining the child support obligation, and because the master's award was consistent with the

level of living the children would enjoy if living with both parents, the circuit court erred and abused its discretion when it reduced the support award from $5,104.75 to $3,300.00 per month without proper explanation.

As explained in *Holley v. Holley*, 181 W.Va. 396, 382 S.E.2d 590 (1989), West Virginia's child support guidelines (the so-called Melson Formula) were adopted as the result of the passage of federal law which became effective on October 1, 1987, and which required each state to establish guidelines for determining the amount of child support awards. 42 U.S.C. § 667 (Supp. IV 1986). As indicated in *Holley v. Holley*, the federal legislation allowed the states to establish the guidelines either by statute of by judicial or administrative action.

In anticipation of the federal requirement, the West Virginia Legislature enacted *W.Va.Code*, 48A–2–8(a), which required the director of the Child Advocate Office within the West Virginia Department of Human Services to establish by legislative rule guidelines for child support award amounts.

As initially written, *W.Va.Code*, 48A–2–8(a), provided:

> Such guidelines shall be followed by the children's advocate, the family law master and the circuit court unless, in each instance, the advocate, master or judge sets forth, in writing reasons for not following the guidelines in the particular case involved.

The Legislature in 1989 amended *W.Va. Code*, 48A–2–8, to provide that:

> There shall be a rebuttable presumption, in any proceeding before a family law master or circuit court judge for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case.

In *Holley v. Holley, Id.*, this Court addressed the question of whether the West Virginia Legislature, in the original version of *W.Va.Code*, 48A–2–8(a), mandated that, in every instance, child support be set strictly according to the guidelines promulgated pursuant to the statute. In addressing that question, the Court, since it confronted a case which arose before the amendment to the Code section became effective, relied upon the language of *W.Va. Code*, 48A–2–8(a), as originally enacted. The Court, however, in note 4, indicated that the language had been amended and that the amendment in no way limited the decision in the *Holley* case.

■ In *Holley v. Holley, Id.*, the Court essentially found that under ordinary circumstances, child support in West Virginia should be calculated in accordance with the rules set forth in the guidelines. The Court, however, indicated that under appropriate circumstances, a different child support could be made. In the single syllabus of the *Holley* case, the Court stated:

> When a family law master or a circuit court enters an order awarding or modifying child support, the amount of the child support shall be in accordance with the established state guidelines, set forth in 6 *W.Va.Code of State Rules* §§ 78–16–1 to 78–16–20 (1988), unless the master or the court sets forth, in writing, specific reasons for not following the guidelines in the particular case involved. *W.Va.Code*, 48A–2–8(a), as amended.

In this Court's view, the rationale of the *Holley* decision still is persuasive in this State, even though *W.Va.Code*, 48A–2–8, has been amended.

In *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990), the Court examined the child support formula further. The Court noted that "[u]nder the child support formula, there are two calculations for child support. The first calculation is to determine the primary child support, which essentially covers the basic needs of the children." The Court explained that the second calculation was called the "SOLA" or "standard of living adjust-

ment" and "[t]he SOLA calculation is then [after the calculation of the primary child support] made based on defined percentages for the number of children." *Bettinger v. Bettinger, Id.* at 540, 396 S.E.2d 709 at 720.

The specific question in the *Bettinger* case was whether it was mandatory for a trial court to use the child support formula in calculating the "SOLA." In addressing the question, the Court noted that the "SOLA" provisions of the child support guidelines, 6 W.Va.C.S.R. § 78–16–2.7.2, provided:

> If the discretionary income of either support obligor exceeds six thousand dollars per month, or if the combined discretionary income of both support obligors exceeds eight thousand dollars per month, the court or master may not apply the percentages set forth in this section. Under such circumstances, the court shall equitably determine the SOLA support obligation so as to avoid a windfall to either support obligor or hardship on either support obligor, and shall be cognizant of the fact that an excessive amount of SOLA support may not be in the best interests of the child or children.

The Court, in examining this language, found that while nothing in it authorized a family law master or circuit court to abandon the guideline requirements with regard to the primary support obligation calculation regardless of the discretionary income of the support obligors, it did use discretionary language with regard to the application of the guidelines to the calculation of the "SOLA" where the income of the support obligors exceeded the stated amount. The Court concluded:

> It seems clear that 6 W.Va.C.S.R. § 78–16–2.7.2 of the child support guidelines allows a family law master or circuit court, in the exercise of sound discretion, to apply less than the full SOLA percentages for child support if one support obligor has a discretionary income above $6,000 a month or both support obligors have a combined discretionary income of $8,000 per month.

*Bettinger v. Bettinger, Id.* at 540, 396 S.E.2d at 721.

The Court warned, however, that the decision to abandon the child support guidelines in calculating the "SOLA" should not be taken lightly when the obligors' incomes exceeded the stated amount. The Court indicated that the discretion to abandon the guidelines in calculating the "SOLA" where the income was above the stated levels was a limited discretion:

> A decision not to follow the SOLA percentages must be undertaken in light of the legislative preference in W.Va.Code 48A–2–8(b) (1989), which is that child support should be keyed to "the level of living which such children would enjoy if they were living in a household with both parents present."

*Bettinger v. Bettinger, Id.* at 540, 396 S.E.2d at 721.

The guidelines themselves impose another restriction upon the abandonment of the guidelines in the calculation of the "SOLA." That is, that where the incomes of the support obligors are above the stated amounts and the law master or court determines to abandon the guidelines, "... the court shall equitably determine the SOLA support obligation so as to avoid a windfall to either support obligor or a hardship on either support obligor...." 6 W.Va.C.S.R. § 78–16–2.7.2.

■ In the present case, the family law master essentially determined that the guidelines should be fully followed in calculating the "SOLA," even though the discretionary income of Robert J. Zaleski exceeded $6,000.00 per month. He concluded that deviation from the guidelines would not afford the children the same level of living that they would enjoy if they were living in a household with both parents present. This decision was clearly proper in line with the holding in *Bettinger v. Bettinger, Id.,* and clearly showed an understanding of the legislative preference that child support should be set so as to afford the standard of living that the children would have if both parents were present.

The circuit court, as previously noted, ruled that the family law master erred in

not deviating from the guidelines in calculating the "SOLA" and in not "capping" the discretionary income of Robert J. Zaleski subject to the "SOLA" calculation at $6,000.00 per month.

It is rather clear that there is a very marked discrepancy in the discretionary income of the obligor parties. Robert J. Zaleski was found to have a net income of approximately $22,000.00 a month and a discretionary income of $14,000.00 per month. It is clear that the move to Maryland has imposed large expenses on the appellant, and with child support of $3,300.00 per month, it does not appear that his children will have a "level of living which such children would enjoy if they were living in a household with both parents present."

In this Court's view, the family law master's decision more appropriately accomplished the purposes of the child support criteria, and his decision to follow the guidelines in the calculation of the "SOLA" was in accordance with the underlying considerations set forth in *Bettinger v. Bettinger, Id.* His determination also equitably established the "SOLA" support obligation so as to avoid a windfall to Robert J. Zaleski or a hardship on the appellant.

In light of the circumstances of the case, this Court concludes that the amount of child support established by the family law master was appropriate and that the circuit court erred in reversing and modifying the family law master's decision.

The judgment of the Circuit Court of Ohio County is, therefore, reversed, and this case is remanded with directions that the circuit court award the appellant child support in accordance with the family law master's recommendation.

Reversed and remanded with directions.