474 S.E.2d 175

STATE of West Virginia ex rel. Dinah Spry MARTIN, Plaintiff Below, Appellant,

v.

Michael SPRY, Defendant Below, Appellee,

West Virginia Department of Health and Human Resources, Intervenor.

No. 23034.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 1996.

Decided May 17, 1996.

Dinah Martin, Willow Springs, Illinois, Appellant, Pro Se.

Anne L. Wandling, Donald C. Wandling, Avis, Witten & Wandling, L.C., Logan, for Appellee.

Ilene S. Schnall, West Virginia Department of Health and Human Resources, Child Support Enforcement Division, Charleston, for Intervenor.

PER CURIAM:

This appeal is before this Court from the final order of the Circuit Court of Logan County, West Virginia, entered on February 27, 1995. That order confirmed an earlier order reducing the amount of child support payable to the appellant, Dinah Spry Martin, by the appellee, Michael Spry, from $300 per month to $50 per month. In granting the appeal, this Court directed the West Virginia Department of Health and Human Resources, Child Support Enforcement Division, to assume the status of an intervenor on behalf of the children.

This Court has before it the petition for appeal, all matters of record and the briefs of counsel. For the reasons stated below, and, in particular, because the circuit court did not follow the Guidelines for Child Support Awards promulgated pursuant to *W.Va. Code*, 48A–2–8 [1993] (now *W.Va. Code*, 48A–2–17 [1995]), or articulate a reason why an application of the Guidelines should not be followed, we reverse the final order and remand for further consideration.

## I

On July 22, 1983, an order divorcing the appellant and the appellee upon the ground of irreconcilable differences was entered in the Circuit Court of Logan County. *W.Va. Code*, 48–2–4 [1981]. The divorce order incorporated a separation agreement between the parties which gave the appellant custody of the parties' three children and required the appellee to pay $300 per month in child support. The children were born in 1971, 1976 and 1977, respectively. In addition, the separation agreement required the appellee to "keep the infant children covered by hospital and medical insurance." The appellant waived alimony.

In November 1987, the appellee was injured in a motor vehicle accident which rendered the appellee unable to continue his employment with Logan Motor Sales, and he began to fall behind in the child support payments. Thereafter, the appellee filed a petition to modify the payments. In March 1989, a mediator filed a report indicating that, based upon a "child support formula," the appellee was incapable of paying further child support. The report noted, however, that the appellee had owned a food and video store known as S & S Carry–Out, title to which the appellee had transferred to his girlfriend, Rhonda Harvey. The appellee and Rhonda Harvey were later married. No reference to S & S Carry–Out appeared in the formula utilized by the mediator for the report. The report of the mediator noted that the appellant had also remarried and was earning approximately $1,053 per month from various employments. According to the report, the appellant, rather than the appellee, was providing medical insurance for the children and had incurred a debt of $1,756 in dental care for the children.

Thereafter, a family law master filed a recommendation with respect to the appellee's petition for modification. That recommendation, essentially a one-page document, stated that the appellee should be "ordered to pay Fifty Dollars ($50.00) per month as support for his infant children until such time as he has regained full time employment or has sufficient income to pay additional support for the infant children." By order entered on October 30, 1989, the recommendation of the family law master was adopted by the circuit court. In addition to reducing the child support from $300 per month to $50 per month, the circuit court entered judgment against the appellee for $3,880 in child support arrearages and ordered the appellee to pay to the appellant $10 per week for medical insurance coverage for the children. Neither the recommendation of the family law master, nor the order of October 30, 1989, referred to any guidelines or formula concerning the support needs of the children or the respective financial circumstances of the parties. Moreover, no mention is made of either the report of the mediator or S & S Carry–Out.

The appellant moved to Illinois, and by order dated July 15, 1991, that State transmitted to West Virginia a petition filed by the appellant to modify the appellee's child support obligation. *See* Ill.Ann.Stat. ch. 750, para. 20/1 (Smith–Hand 1993), *et seq.* and *W.Va. Code*, 48A–7–1 [1986], *et seq.* (setting forth current uniform reciprocal enforcement of support statutes and providing that, under the circumstances of this case, the law of West Virginia is determinative of the appellee's duty of support). The appellant sought an increase in child support payments. As the result of an unexplained delay, proceedings on the appellant's Illinois petition for modification did not commence in West Virginia until 1993, and, according to the intervenor, the appellee was not served with the petition until May 24, 1993. In the meantime, the appellee paid the $3,880 judgment for child support arrearages.

On December 1, 1994, an evidentiary hearing was conducted in Logan County. Fol-

lowing the hearing, the family law master submitted a recommendation finding that no change of circumstances had occurred concerning the parties since the modification of child support in 1989 and that, therefore, the support obligation should remain at $50 per month. Specifically, the recommendation stated that only one of the parties' children remained under the age of 18 and that support should continue as to that child until the child reaches age 20, if the child remains in school. Moreover, the recommendation noted that, in 1993, the children received $6,434 in social security benefits through a disability claim of the appellee. The recommendation further noted that S & S Carry–Out belonged to Rhonda Harvey Spry, the appellee's wife, and that the appellee had an ownership interest in two separate businesses known as Triangle Auto Sales, Inc., and L.A.'s Nitelife, Inc., both of which resulted in no income to the appellee in 1993.

Although not discussed in the recommendation, the 1993 federal tax returns of the appellee and Rhonda Harvey Spry concerning the three businesses listed gross receipts or sales for S & S Carry–Out in the amount of $196,402 and gross receipts or sales for Triangle Auto Sales, Inc., in the amount of $91,378. The return for L.A.'s Nite Life, Inc., listed gross receipts or sales in the amount of $41,975. As indicated above, however, after various deductions, no taxable income resulted in 1993 as to either Triangle Auto Sales, Inc., or L.A.'s Nitelife, Inc. S & S Carry–Out listed business income in the amount of $3,573.

By final order entered on February 27, 1995, the circuit court adopted the recommendation of the family law master. As with the earlier 1989 recommendation and modification order, neither the current recommendation, nor the final order of February 27, 1995, referred to any guidelines concerning child support. Nor, beyond a general admonition to the appellee to provide information concerning health insurance, did the final order address the appellee's ability to provide medical insurance for the children, payments for which, the appellant asserted, had not been kept current by the appellee. The appellant's *pro se* appeal from the final order

was granted by this Court in September 1995.

## II

As this Court has often observed, a recommended order of a family law master is reviewable by a circuit court pursuant to statute, *W.Va. Code*, 48A–4–16 [1993], *W.Va. Code*, 48A–4–20 [1993], and pursuant to this Court's *Rules of Practice and Procedure for Family Law*. *Magaha v. Magaha*, 196 W.Va. 187, 469 S.E.2d 123 (1996). *See also*, syl. pt. 1, *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995). The final order of a circuit court in such cases is, of course, reviewable by this Court. *Hinerman v. Hinerman*, 194 W.Va. 256, 259, 460 S.E.2d 71, 74 (1995); *Marilyn H. v. Roger Lee H.*, 193 W.Va. 201, 204, 455 S.E.2d 570, 573 (1995).

In syllabus point 4 of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996), we recently observed: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." *See also Phillips v. Fox*, 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995). In *Phillips*, we cited syllabus point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), which states that in reviewing challenges to findings made by a family law master which were adopted by a circuit court, "a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review." Syl. pt. 1, *Michael v. Michael*, 196 W.Va. 155, 469 S.E.2d 14 (1996); syl. pt. 1, *Summers v. Summers*, 195 W.Va. 224, 465 S.E.2d 224 (1995); syl. pt. 1, *Storrs v. Storrs*, 195 W.Va. 21, 463 S.E.2d 853 (1995); *Young v. Young*, 194 W.Va. 405, 408, 460 S.E.2d 651, 654 (1995).

In this action, the appellant contends that the circuit court committed error in deter-

mining that she was only entitled to $50 per month for child support. The appellant also contends that the circuit court committed error in not addressing the issue of the appellee's obligation to provide medical insurance for the children. In support of the appellant, the intervenor asserts, *inter alia,* that the circuit court committed error in not following the Guidelines for Child Support Awards or articulating a reason why an application of the Guidelines would be unjust or inappropriate. The appellee, on the other hand, contends that the appellant failed to show any change of circumstances since the court ordered reduction of October 30, 1989, which would justify an increase.

Child support in West Virginia is, of course, subject to modification by statute, and, in particular, pursuant to *W.Va. Code,* 48-2-15(e) [1993], which states that orders modifying child support "shall be in conformance with the requirements of support guidelines" promulgated under *W.Va. Code,* 48A-2-8 [1993] (now *W.Va. Code,* 48A-2-17 [1995]). *See also* Rule 29 of this Court's *Rules of Practice and Procedure for Family Law.* In fact, this Court recognized in *Wood v. Wood,* 184 W.Va. 744, 748, 403 S.E.2d 761, 765 (1991), that "[t]he child support guidelines must be considered in every case concerning child support." *See also Sly v. Sly,* 187 W.Va. 172, 178, 416 S.E.2d 486, 492 (1992); *Moss v. Bonnell,* 186 W.Va. 301, 304, 412 S.E.2d 495, 498 (1991). As *W.Va. Code,* 48A-2-8 [1993], states: "There shall be a rebuttable presumption, in any proceeding before a family law master or circuit court judge for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded." That statute expressly makes the guidelines applicable to modification proceedings, *W.Va. Code,* 48A-2-8(e) [1993], and the current guidelines, entitled "Guidelines for Child Support Awards," are located in Title 78, Series 16, of the West Virginia Code of State Rules.

In the syllabus of *Holley v. Holley,* 181 W.Va. 396, 382 S.E.2d 590 (1989), this Court held:

When a family law master or a circuit court enters an order awarding or modifying child support, the amount of the child support shall be in accordance with the established state guidelines, set forth in 6 *W.Va. Code of State Rules* §§ 78-16-1 to 78-16-20 (1988), unless the master or the court sets forth, in writing, specific reasons for not following the guidelines in the particular case involved. *W.Va. Code,* 48A-2-8(a), as amended.

*See also* syl. pt. 8, *Signorelli v. Signorelli,* 189 W.Va. 710, 434 S.E.2d 382 (1993); syl. pt. 1, *Taylor v. Taylor,* 189 W.Va. 515, 432 S.E.2d 785 (1993); syllabus, *Zaleski v. Zaleski,* 189 W.Va. 454, 432 S.E.2d 538 (1993); syl. pt. 5, *Phillips v. Phillips,* 188 W.Va. 692, 425 S.E.2d 834 (1992); syl. pt. 4, *Sly, supra;* syl. pt. 1, *Moss, supra;* syl. pt. 3, *Stevens v. Stevens,* 186 W.Va. 259, 412 S.E.2d 257 (1991); syl. pt. 1, *Wood, supra;* syl. pt. 1, *Wyant v. Wyant,* 184 W.Va. 434, 400 S.E.2d 869 (1990); syl. pt. 1, *Henderson v. Henderson,* 183 W.Va. 627, 397 S.E.2d 916 (1990); syl. pt. 9, *Bettinger v. Bettinger,* 183 W.Va. 528, 396 S.E.2d 709 (1990).

Similarly, syllabus point 1 of *Wood v. Wood,* 190 W.Va. 445, 438 S.E.2d 788 (1993), states:

'[T]he amount of child support shall be in accordance with the child support guidelines established pursuant to *W.Va. Code,* 48A-2-8(a) [1989], unless the family law master or the court shall determine, in a written finding or a specific finding on the record, that the application of the guidelines would be either unjust, inappropriate, waived by the parties pursuant to the safeguards outlined in *W.Va. Code,* 48A-2-8(a)(1) [1989], or contrary to the best interests of the children or the parties.' Syl. pt. 3, in part, *Gardner v. Gardner,* 184 W.Va. 260, 400 S.E.2d 268 (1990).

In this action, the intervenor suggests that, in view of the appellee's professed inability to engage in regular employment following his accident as contrasted with the relatively large sums of money committed to his business interests, the ability of the appellee to pay child support is difficult to calculate. Thus, asserts the intervenor, a reason exists to digress from the Guidelines for Child Sup-

port Awards. It should be noted, however, that, although this Court has before it an audio tape of the evidentiary hearing of December 1, 1994, no transcripts of any of the various hearings in this case have been made a part of this appeal. Our review, therefore, is necessarily attenuated from a factual standpoint. It is clear, on the other hand, that the legal mandate concerning the use of the Guidelines was not followed by the family law master or the circuit court. The Guidelines were not addressed in the recommendation and modification order of 1989 and were not subsequently addressed in the recommendation and final order now before us.

Even if the above-described flaw as to the 1989 modification order is overlooked, the record indicates that the appellee may have acquired the interests in Triangle Auto Sales, Inc. and L.A.'s Nitelife, Inc. after 1989, which would suggest a change of circumstances warranting investigation. The finding of the circuit court in the final order of February 27, 1995, that those businesses resulted in no income to the appellee was limited to the year 1993 and did not mention other years. Moreover, that order simply stated that S & S Carry-Out was owned by Rhonda Harvey Spry and made no further comment. The circuit court made no findings concerning the appellee's involvement with S & S Carry-Out. As discussed above, the mandate concerning the use of the Guidelines was established by statute and has been recognized in numerous decisions of this Court. In view of our concern that children receive the support to which they are entitled, we must conclude that the failure of the circuit court to address the Guidelines constituted error.

Finally, the July 22, 1983, order divorcing the appellant and the appellee adopted the parties' agreement that the appellee would "keep the infant children covered by hospital and medical insurance." The record indicates, however, that from 1983 until the modification order of October 30, 1989, the appellant, rather than the appel-

lee, provided medical insurance for the children and incurred a debt of $1,756 in dental care for the children. Pursuant to the order of October 30, 1989, the appellee was ordered to pay the appellant $10 per week for medical insurance coverage for the children. The appellant has asserted that the appellee failed to keep those payments current. The final order of February 27, 1995, did not address the appellee's ability to provide medical insurance, or pay arrearages thereof, and, thus, the circuit court also committed error in that regard. As stated in *W.Va. Code*, 48–2–15a(b) [1994]: "In every action to establish or modify an order which requires the payment of child support, the court shall ascertain the ability of each parent to provide medical care for the children of the parties." *See also* syl. pt. 2, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993).

Upon all of the above, therefore, the final order of the Circuit Court of Logan County is reversed, and this action is remanded to that court for further proceedings. The circuit court is directed upon remand to follow the Guidelines for Child Support Awards or articulate a reason why an application of the Guidelines should not be followed. Specifically, the circuit court's reconsideration of child support shall include: (1) a more thorough disclosure of the appellee's income and assets, (2) a review of the appellee's obligation and ability to provide medical insurance, and the payment of any arrearages thereof, and (3) a determination of the extent to which the child support payments, as modified, shall be retroactive. *See* Rules 19 and 29 of this Court's *Rules of Practice and Procedure for Family Law.**

Reversed and remanded.

---

* As noted above, the appellee was injured in a motor vehicle accident in November 1987. The record indicates, however, that since the accident the appellee has been involved in the affairs of the three businesses discussed herein, particu-

larly Triangle Auto Sales, Inc., and L.A.'s Nitelife, Inc. Therefore, in addition to the above considerations upon remand, and in view of the absence of evidentiary transcripts before this Court, the circuit court should make inquiry into

the appellee's capacity to earn income, with respect to his obligation to pay child support and provide medical insurance. *See Taylor, supra,* 189 W.Va. at 517, 432 S.E.2d at 787 and 6 *W.Va. Code of State Rules* § 78–16–4, concerning the acceptance of suitable work. In particular, as this Court stated in *Jeffrey v. Jeffrey,* 188 W.Va. 476, 479 n. 3, 425 S.E.2d 152, 155 n. 3 (1992):

If a determination is made that 'a limitation on income is not justified in that it is a result of a self-induced decline in income, a refusal to occupy time profitably, or an unwillingness to accept employment and earn an adequate sum, the court or master may consider evidence establishing the support obligor's earning capacity in the local job market, and may attribute income to such obligor.' 6 W.Va.C.S.R. 78–16–4.1.2 [1988]. In the alternative, if an obligor is remarried and is 'unemployed, underemployed or is otherwise working below full earning capacity,' the court or master may attribute income in the amount which can be earned working full-time at a job paying the current minimum wage. 6 W.Va.C.S.R. 78–6–4.1.3.

The regulations cited above in *Jeffrey* are currently found in 6B *W.Va. Code of State Rules* § 78–16–4.