491 S.E.2d 24

**David B. LANG, Plaintiff Below, Appellee,**

v.

**Catherine L. IAMS, Formerly Catherine L. Lang, Defendant Below, Appellant.**

**No. 23551.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 29, 1997.

Decided July 8, 1997.

W.T. Weber, Jr., Weber & Weber, Weston, for Appellee.

J. Burton Hunter III, Hunter, Law & Levine, Buckhannon, for Appellant.

PER CURIAM:

This is an appeal by Catherine L. Iams (hereinafter "Appellant" or "mother") from a December 11, 1995, order of the Circuit Court of Upshur County awarding $14,400 in child support arrearage, rather than the $25,000 arrearage, plus interest, sought by the Appellant. We reverse the lower court's determination and remand for entry of an order awarding the Appellant the total amount of arrearage, plus 10% interest.

I.

The Appellant and Appellee David B. Lang (hereinafter "Appellee" or "father") were divorced on May 21, 1984. Pursuant to the divorce order, the Appellee was required to pay child support of $600 monthly for the parties' two children, Brieanne, presently age twelve, and Joshua, presently age seventeen. That order of child support has never been modified.

In early 1990, following the loss of the Appellee's employment, the parties allegedly agreed to reduce child support payments from $600 to $300 per month. The Appellant testified that she and the Appellee entered into an agreement, without court order, to postpone the required payments due to his lack of employment. The Appellant further explained that the Appellee had told her that he had lost his job and could not afford to pay the $600 per month. She specifically stated that she never agreed to waive the child support payments, only to postpone them.

The Appellee, however, contends that the reduction from $600 to $300 per month was not temporary in nature and that, in exchange for the reduction, the Appellant and her husband were permitted to claim the children as an exemption for income tax pur-

poses.[1] A March 1990 letter from the Appellant to the Appellee indicates the Appellant's dissatisfaction with the reduction and raises the issue of unfairness to the children due to the Appellee's failure to pay the amount of child support he should be paying.

The Appellee continued to pay the $300 monthly child support from 1990 through 1995, and on October 5, 1995, the lower court entertained the Appellant's petition to hold the Appellee in contempt for failure to pay the required $600 monthly child support. The Appellant sought child support arrearage of $18,450.00, medical expenses of $2,475.90, and $4,727.40 interest, for a total of $25,653.30. During the hearing, the Appellant sought to establish that her acquiescence to the reduction was temporary in nature, based upon the Appellee's temporary unemployment.[2] The Appellee maintained that the reduction was permanent and was premised upon the Appellant's receipt of the privilege of claiming the children as exemptions. The Appellee also argued that the Appellant was equitably estopped from raising the issue due to the passage of time.

By order dated December 11, 1995, the lower court resolved the arrearage issue by awarding $14,400 to the Appellant for child support arrearage, to be paid in $600 monthly installments, without interest, from October 1995 through October 1997. The lower court arrived at the $14,400 award by giving the Appellee credit for the tax reductions received by the Appellant and her husband. From October 1, 1997, when the oldest child will turn eighteen, to October 1, 2001, the Appellee was ordered to pay $300 monthly for Brieanne plus $300 monthly to cover the arrearage of $14,400 over the specified four years. The lower court specified that no interest would be due as long as the Appellee makes timely payments. Thus, the lower court acknowledged the $600 monthly original award, and ordered payments of that amount to commence until the oldest child reaches eighteen. However, under the scheme delineated by the lower court, only $14,400 of the arrearage will be repaid by the Appellee, and no interest will be charged upon that amount.[3]

## II.

The Appellant raises three particular issues for resolution by this Court: the lower court's waiver of a portion of the $25,000 arrearage, its failure to award post-judgment interest, and its credit to the Appellee of the amounts received by the Appellant and her husband by claiming the children as exemptions.

 " 'This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed de novo.' Syl. Pt. 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syl. Pt. 1, *State ex rel. Martin v. Spry,* 196 W.Va. 508, 474 S.E.2d 175 (1996).

 We have consistently held that the duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support.[4] Syl. Pt. 3, *Robinson v. McKinney,* 189 W.Va. 459, 461, 432 S.E.2d 543, 545 (1993). *See also Wyatt v. Wyatt,* 185 W.Va. 472, 408 S.E.2d 51 (1991). In *Robinson,* we encountered an argument very similar to the one forwarded by the Appellee in the present case. The father in *Robinson* contended that the mother was equitably estopped from seeking enforcement

---

1. Pursuant to the divorce order, the Appellee was not entitled to the exemption once he was in default with the payment of child support.

2. The Appellee was apparently unemployed for approximately six months.

3. The lower court did specify that the Appellant would be permitted to continue to claim the children as exemptions.

4. In *Kimble v. Kimble,* 176 W.Va. 45, 341 S.E.2d 420 (1986), however, we held that a custodial parent is estopped from seeking child support payments (unless the welfare of the child is affected), where the party responsible for child support payments signs a formal consent to the child's adoption which releases the party from child support payments, and the adoption is thereafter not consummated to the detriment of the noncustodial parent due to the inaction of the custodial parent. *Id.* at 56, 341 S.E.2d at 431.

of the initial child support order due to the agreement of the parties and the passage of time. We recognized in *Robinson* that "courts have closely guarded children's rights since they are often voiceless." 189 W.Va. at 463, 432 S.E.2d at 547. In syllabus point seven of *Robinson*, we explained that "[o]rdinarily an agreement to modify or terminate a child support obligation is effective only upon entry of a court order...." *Id.* at 464–65, 432 S.E.2d at 548–49. Similarly, in syllabus point two of *Kimble v. Kimble*, 176 W.Va. 45, 341 S.E.2d 420 (1986), we explained that "[a] decretal child support obligation may not be modified, suspended, or terminated by an agreement between the parties to the divorce decree." *Id.* at 47, 341 S.E.2d at 422.

As the Supreme Court of Illinois recognized in *Blisset v. Blisset*, 123 Ill.2d 161, 121 Ill.Dec. 931, 526 N.E.2d 125 (1988):

Allowing former spouses to modify a court-ordered child support obligation by creating a new agreement between themselves without judicial approval would circumvent judicial protection of the children's interests. Former spouses might agree to modify child support obligations, benefiting themselves while adversely affecting their children's best interests. Parents may not bargain away their children's interests.... It is for this reason, then, that parents may create an enforceable agreement for modification of child support only by petitioning the court for support modification and then establishing, to the satisfaction of the court, that an agreement reached between the parents is in accord with the best interests of the children.

*Id.,* 121 Ill.Dec. at 934, 526 N.E.2d at 128.

█ With regard to the court's role in enforcing decretal judgments, we have explained that "[a] circuit court lacks the power to alter or cancel accrued installments for child support." Syl. Pt. 2, *Horton v. Horton*, 164 W.Va. 358, 264 S.E.2d 160 (1980). In syllabus point two of *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987), we concluded that "[t]he authority of the circuit courts to modi-

fy alimony or child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support installments." *Id.* at 744, 356 S.E.2d at 498. West Virginia Code § 48-2-15(e) (1991), in part, authorizes the lower court to prospectively alter a child support order:

The court may also from time to time afterward, on the verified petition of either of the parties or other proper person having actual or legal custody of the minor child or children of the parties, revise or alter such order concerning the custody and support of the children, and make a new order concerning the same, issuing it forthwith, as the circumstances of the parents or other proper person or persons and the benefit of the children may require[.]

█ We have also very strictly limited the use of the doctrine of equitable estoppel in child support enforcement matters. In *Lauderback v. Wadsworth*, 187 W.Va. 104, 416 S.E.2d 62 (1992), for instance, we declined to apply the doctrine where the mother had agreed in a 1981 post-divorce agreement to accept $25,000.00 for her share in the jointly owned real estate and for all past and future child support. The mother had sought enforcement of the child support order in 1990, and the father argued that the 1981 agreement estopped the mother from seeking unpaid child support. *Id.* at 106, 416 S.E.2d at 64. Based upon *Kimble* and *Goff*, we concluded that the mother could seek unpaid child support and reemphasized that a child support obligation may not be altered by agreement between the parties. *Id.* at 108, 416 S.E.2d at 66.[5]

█ An initial child support order is entered for the benefit of the child or children involved. The duty owed is from the parent to the child, rather than between the two parents. Thus, parents cannot modify the original child support order by agreement, nor can courts modify the original

---

5. In syllabus point six of *Robinson,* we also explained that "[t]he ten-year statute of limitations set forth in *W.Va.Code,* 38–3–18 [1923] and not the doctrine of laches applies when enforcing a decretal judgment which orders the payment of monthly sums for alimony or child support." 189 W.Va. at 461, 432 S.E.2d at 545.

child support order retroactively. In the present case, any attempt by the parents to modify the order by agreement, regardless of the present factual variations as to the character of the agreement, is null and void. The inquiries into the temporary or permanent nature of the reduction, the acquiescence of the mother, and the exchange of monetary payments for tax exemptions are irrelevant.[6] The only extant issue is the amount of child support arrearage.

 The Appellant also maintains that the lower court erred in failing to award post-judgment interest and in allowing the Appellee a credit for the income tax savings of the Appellant and her husband. We agree, and order the lower court on remand to calculate the amount of arrearage based upon the $300 reduction by the Appellee and post-judgment interest on that arrearage, without allowing the Appellee a credit for any tax savings of the Appellant and her husband. The divorce order unequivocally stated that the Appellee was entitled to claim the children as exemptions only as long as he was not in default on child support. Once he was in default for failure to pay the entire $600 monthly payment, the Appellant became entitled to utilize the exemptions. Loss of the use of the exemptions was a function of the Appellee's default on child support payments.

Based upon the foregoing, we reverse the lower court's determination and remand for entry of an order awarding the Appellant the total amount of arrearage, plus 10% interest. Pursuant to the divorce order, once the Appellee becomes current in child support payments, he will thereafter be entitled to claim the children as exemptions as long as he is not in default on child support.

Reversed and remanded.

MAYNARD, J., dissents and files a dissenting opinion.

---

6. The Appellee's contention that the lower court's resolution was appropriate because it was simply settling a disputed amount rather than modifying or reducing an original award illustrates the misapprehension regarding the ability of the parties to modify the initial order or of the court to retroactively alter the amount due. An order settling a *disputed* amount is inappropriate in any instance where the amount due is indisputable.

MAYNARD, Justice, dissenting:

I dissent, not because the majority is wrong in its application of the law in this case; in fact, they are absolutely right. The law cited by the majority on this case is well-reasoned and well-settled. There can be no dispute that it is our law that circuit courts lack power to alter or cancel accrued child support installments. It is also plainly our law that parties may not modify or terminate child support orders by private agreements.

The social and policy considerations which gave rise to these rules are substantial, and the rules serve necessary and legitimate ends. For one thing, they prevent an avalanche of fraud and perjured testimony which unquestionably would occur if we were to recognize private oral or written agreements modifying court orders. To allow such a thing would victimize innocent children and result in chaos. Accordingly, our present rules in this area are probably the only sensible rules we can fashion.

So, what's the problem? Well, the problem occurs when these rules are applied in the real world rather than in the world of lawyers and judges. The outcome then is often really harsh and unfair, and in many, many cases, it is simply cruel.

When a person's income is reduced or eliminated because he or she is between jobs, or is laid-off, or loses a job and that person genuinely cannot pay what has been ordered, we nevertheless require that he or she engage in complicated litigation, in an adversary setting, in order to secure a simple reduction of child support.

The process is so complex that most people need lawyers, and this is a time when they simply cannot afford lawyers! After all, the process requires the filing of a verified petition with mandatory and specific allegations, proper service thereof with correct proof of service on the return, scheduling a hearing, conducting the hearing, and so on. I am convinced that most people don't even know that a court-ordered modification is required,

much less how to go about obtaining it, and even less still about how to comply with all the procedural technicalities. In the past, the Supreme Court has tried to simplify the process and now even makes forms available to assist "do-it-yourselfers" with modification petitions. Unfortunately, that has not solved the problem.

What would solve it? Well, for one thing, a slight change in our rules might help provide part of the solution. Private agreements modifying court orders simply can never be allowed for obvious reasons. That is a hard rule, but a good one. No change is desirable or practical regarding this rule.

However, the solution might be to give trial judges, in the proper exercise of their sound discretion, the power to modify accrued child support installments when there is absolutely clear and cogent evidence, supported by work record documents, that an obligor has genuinely suffered a substantial reduction in income due to job loss, lay-off or change of jobs. I believe our trial judges would wisely and carefully use that power, and the time has come to modify the rule so they can. The present rule is simply too inflexible. To be just and fair, I think it must be changed.

The trial judge in this case was only trying to achieve justice and reach a fair result. I wish our law would allow him to do that. Since it won't, I respectfully dissent.